[Cite as *Candlewood Lake Assn., Inc. v. Wilson*, 2016-Ohio-5614.]

COURT OF APPEALS
MORROW COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| CANDLEWOOD LAKE | : | JUDGES: |
| ASSOCIATION, INC. | : | Hon. Sheila G. Farmer, P.J. |
| | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | |
| -vs- | : | |
| | : | Case No. 15CA0007 |
| MICHAEL A. WILSON, ET AL. | : | |
| | : | O P I N I O N |
| Defendants-Appellants | : | |

CHARACTER OF PROCEEDING:            Appeal from the Court of Common
                                    Pleas, Case No. 2013CV00296

JUDGMENT:                           Affirmed/Reversed in Part and
                                    Remanded

DATE OF JUDGMENT:                   August 22, 2016

APPEARANCES:

For Plaintiff-Appellee                  For Defendants-Appellants

MATTHEW T. GRIFFITH                     DAVID H. LOWTHER
7 West High Street                      132 South Main Street
Mt. Gilead, OH  43338                   Marion, OH  43302

*Farmer, P.J.*

{¶1}   Appellee, Candlewood Lake Association, Inc., is an association of property owners in Candlewood Lake Subdivision located in Morrow County.  In July 2007, appellants, Michael Wilson and his son Zachariah Wilson, purchased Unit 4, Lot 147, in the subdivision.  In August 2008, appellants took title of Unit 4, Lots 145 and 146.  In April 2009, appellant Michael Wilson conveyed his interest in all of the lots to his son while retaining a life estate in the lots.  Appellants failed to pay the required assessments and other fees pursuant to appellee's bylaws after October 2009.

{¶2}   On December 8, 2009, appellee notified appellants they would no longer accept their payments due to a dispute involving forged receipts.  As a result of nonpayment of assessments, appellants lost their privileges per the bylaws to the amenities of the premises e.g., pool, lake, shelter house, and bathrooms.  Appellee agreed to resume accepting payments on February 5, 2010.

{¶3}   On September 22, 2011, appellee filed a lien notice and affidavit on the lots for appellants' failure to pay assessments and other fees.

{¶4}   In 2013, appellee amended its bylaws to include water and sewer as a defined property owner privilege.

{¶5}   On September 5, 2013, appellee filed a complaint against appellants for declaratory judgment and lien foreclosure, claiming appellants violated deed restrictions and failed to pay their assessments.  On November 14, 2013, appellants filed their answer and counterclaim, claiming appellee denied them access to their lots, denied services to the lots, and interfered with their covenant of quiet enjoyment.

{¶6}   An amended complaint was filed on February 13, 2014, to change the name of a party defendant.

{¶7}   A bench trial was held on February 11, 2015.   By journal entry filed February 13, 2015, the trial court ordered the parties to submit their respective summations, including clarification on claimed damages.   By journal entry filed May 1, 2015, the trial court found appellee had a valid lien, and ordered the parties to mediation to settle the amounts owed.   Mediation was unsuccessful.   A hearing on damages was held on October 19, 2015.   By journal entry filed October 23, 2015, the trial court awarded appellee as against appellants $15,910.53, and ordered foreclosure on the lots.

{¶8}   Appellants filed an appeal and this matter is now before this court for consideration.   Assignments of error are as follows:

I

{¶9}   "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT BY GRANTING JUDGMENT TO PLAINTIFF-APPELLEE IN THE AMOUNT OF $15,910.53."

II

{¶10}  "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT BY DENYING DEFENDANT-APPELLANT'S COUNTERCLAIM FOR DENIAL OF THE USE AND ENJOYMENT OF HIS PROPERTY."

I

{¶11}  Appellants claim the trial court erred by granting judgment to appellee in the amount of $15,910.53.   Appellants claim there was no evidence that they were

given proper notice for individual violations pursuant to R.C. 5312.11(C).  Appellants also claim because appellee refused to accept assessment payments from December 2009 onward, they should not be responsible to pay them.  We agree in part.

{¶12}  On review for manifest weight, the standard in a civil case is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."  *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist.1983).  See also, *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52; *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179.  In weighing the evidence, however, we are always mindful of the presumption in favor of the trial court's factual findings.  *Eastley* at ¶ 21.  "In a civil case, in which the burden of persuasion is only by a preponderance of the evidence, rather than beyond a reasonable doubt, evidence must still exist on each element (sufficiency) and the evidence on each element must satisfy the burden of persuasion (weight)."  *Id.* at ¶ 19.

{¶13}  In summarizing the trial court's May 1, 2015 journal entry, we glean the following specific findings from the evidence presented that apply to the damages award:

{¶14}  1) Appellants had not paid assessments since October 2009, admitted to by appellant Michael Wilson.  T. at 220.

{¶15}  2) On December 8, 2009, appellee notified appellants they would no longer accept their payments.  T. at 69, 135; Defendant's Exhibit A.

{¶16} 3) On February 5, 2010, appellee agreed to resume accepting payments. T. at 85, 136; Defendant's Exhibit 6.

{¶17} 4) On September 22, 2011, appellee filed a lien notice and affidavit on the lots for appellants' failure to pay assessments and other fees. T. at 129-131; Plaintiff's Exhibit 5. No one objected to said lien.

{¶18} 5) In 2013, appellee amended its bylaws to include water and sewer as a defined property owner privilege. T. at 132-133.

{¶19} 6) Appellant Michael Wilson admitted there was never a complete denial of access to the lots. T. at 220-222.

{¶20} From the trial court's conclusions, we ascertain the following:

{¶21} 1) Appellee's lien was valid and properly filed and recorded.

{¶22} 2) The trial court disallowed the recovery of assessments from December 8, 2009 through February 5, 2010, appellee's "refusal" period.

{¶23} 3) The trial court disallowed the recovery of any assessments, fines, and costs associated with appellants placing a "No Trespassing" sign on their lot(s).

{¶24} The trial court then ordered the parties to mediation which was unsuccessful. On May 19, 2015, appellee filed an adjusted accounting and balance due based upon the trial court's May 1, 2015 journal entry, with a total of $15,910.53 due and owing. Appellants filed objections to the calculations. By journal entry filed October 23, 2015, the trial court found damages to appellee in the amount of $15,910.53, and ordered foreclosure on the lots.

{¶25} Appellants argue they never received a written notice of alleged violations, e.g., "go kart" violation and "shed permit" violations, totaling $5,930.63 of the damages award pursuant to R.C. 5312.11(C).

{¶26} R.C. 5312.11 governs assessments on individual lots. Subsection (C) states the following:

(C) Prior to imposing a charge for damages or an enforcement assessment pursuant to this section, the board of directors shall give the owner a written notice that includes all of the following:

(1) A description of the property damage or violation;

(2) The amount of the proposed charge or assessment;

(3) A statement that the owner has a right to a hearing before the board to contest the proposed charge or assessment;

(4) A statement setting forth the procedures to request a hearing;

(5) A reasonable date by which the owner must cure a continuing violation to avoid the proposed charge or assessment, if such an opportunity to cure is applicable.

{¶27} Gary Weaver, appellee's Security Supervisor, testified he issues citations containing the above cited criteria. T. at 96-97. He testified he issued citations to appellants for the shed violations, although appellant Zachariah Wilson testified he never received any citations as he was essentially an "absentee owner." T. at 98-99,

157. Jim Hostetler, appellee's General Manager, testified appellants never filed any appeals. T. at 135.

{¶28} Given Mr. Weaver's testimony, we find sufficient evidence to establish the requirements of R.C. 5312.11(C) were met as to the shed violations. However, no evidence was presented on the "go kart" and "no registration" violations dated November 3, 2008, as well as the "golf cart" violation dated September 22, 2010, and the "overnight stay" violation dated May 8, 2013. We note appellants objected to these amounts via their second objections filed July 2, 2015. Therefore, the amounts for these violations totaling $400.00 shall be deducted from the $15,910.53 amount owed.

{¶29} Appellants also argue because appellee refused to accept assessment payments "from December 2008 (sic) until the present, the granting of a judgment for those charges is unreasonable and arbitrary." Appellant's Brief at 8.

{¶30} Kimberly Bood, appellee's Finance Director, testified the last payment posted to the account was October 19, 2009. T. at 27. Appellant Michael Wilson agreed he had not paid any assessment since said date. T. at 220. Ms. Bood acknowledged appellee stopped accepting payments as of December 8, 2009 due to a dispute over forged receipts. T. at 68-69; Defendant's Exhibit A. However, appellee resumed accepting payments on February 5, 2010, and appellant did not attempt to make any payments after this date. T. at 85-86; Plaintiff's Exhibit 6.

{¶31} Although appellant Michael Wilson testified he attempted to settle the matter via a payment schedule and attempted partial payment, it is undisputed that the assessments were not paid. T. at 202-203, 227. As noted above, the trial court rejected any amounts owed from December 8, 2009, when appellee refused payments,

through February 5, 2010, when appellee agreed to resume accepting payments. Those assessment amounts are deleted from the "Adjusted Balance" filed May 19, 2015.

{¶32} We find appellants self-help claim in retaliation to the 2008 dispute over forged receipts to be insufficient to negate their obligations under the bylaws.

{¶33} We note in the trial court's May 1, 2015 journal entry under "**Issue 2,**" the trial court determined appellee's denial of water and sewer services was valid as of January 1, 2013, and disallowed the recovery of any assessments claimed prior to January 2013 for the services. However, under "**DECISION**" at No. 3, the trial court determined any assessments related to water and sewer after April 1, 2010 "may be calculated and sought." A review of the "Adjusted Balance" filed May 19, 2015, does not indicate any assessments specifically designated for water and sewer services, so we are unable to review what was and was not included. We find the two determinations to be inconsistent, and remand the matter to the trial court to clear up the confusion.

{¶34} Upon review, we find the trial court's decision is supported by the evidence presented in the record, and do not find any manifest miscarriage of justice, except for the aforementioned $400.00 credit to appellants and the inconsistent determinations related to the water and sewer services.

{¶35} Assignment of Error I is granted in part and denied in part.

II

{¶36} Appellants claim the trial court erred in not finding in their favor on their counterclaim for loss of quiet enjoyment of the lots. Appellants claim they were denied

access to the privileges of the premises, e.g., pool, lake, shelter house, and bathrooms, and water and sewer services, which was equal to the unpaid assessments claimed by appellee.   We disagree.

{¶37}  Appellant Michael Wilson testified he was aware of the bylaws and agreed his lots were subject to the bylaws.  T. at 222-223.  The bylaws, Plaintiff's Exhibit 3, states the following in pertinent part:

**P606   SUSPENSION OF PRIVILEGES OF MEMBERSHIP:**

The Voting Member and any Associate Members may have privileges revoked for violation of the Bylaws, Deed Restrictions, or other infractions as determined by the Board, for non-payment of any operating charges, assessments, fine, or utility charges following notice of the Board of Trustees and an opportunity, if requested in writing, to be heard at an open meeting of the Board of Trustees.  In all cases the decision of the Board of Trustees shall be final and binding.

**Privileges – defined as, but not limited to:**

A. Lake use, for any purpose.

B. Lodge and Community Center use, whether RV Lodge or Main Lodge.

C. Pool use, whether RV Poor or Main Pool.

D. Beach use for any purpose.

E. Tennis courts, basketball courts, and baseball field use.

F. Use of any common property except roads used to travel to and from property owner's or renter's dwelling or lot.

G. Serving as a Trustee or Committee Member.

H. Receiving ballots and voting rights.

I. Receiving notices regarding special meetings or ballots.

J. Receiving any permits.

K. Water & Sewer Services.

**P607**  **NOTICE:**

No notice or hearing shall be required to suspend privileges for the nonpayment of charges.   Privileges shall automatically be suspended when charges are past due.



{¶38} From the evidence and findings addressed in Assignment of Error I, there was a short time (three months) during the "refusal" period when appellants' right to use their privileges was inappropriately barred.   Mr. Hostetler testified appellant Michael Wilson was in fact on the lake and in the lodge during the prohibited time period "by invitation of other members."  T. at 150.  Appellant Michael Wilson admitted he could use the privileges "if someone asked me to go do something and I told them, I said, 'as long as I'm your guest I can do whatever', you know."  T. at 205.  Water and sewer services were added to the bylaws as a defined property owner privilege in 2013 which was not in effect during the refusal period.  T. at 133.

{¶39} Upon review, we find the trial court did not err in not finding in favor of appellants on their counterclaim.

{¶40}  Assignment of Error II is denied.

{¶41}  The judgment of the Court of Common Pleas of Morrow County, Ohio is hereby affirmed in part and reversed in part, and the matter is remanded to said court to credit appellants $400.00 and issue a corrected determination on the water and sewer services.

By Farmer, P.J.

Hoffman, J. and

Delaney, J. concur.

SGF/sg 721